**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MARY PAULDING, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 24-CV-00074-CDL |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
|        Defendant. | ) | |

## OPINION AND ORDER

Before the Court is the "Motion for Summary Judgment, or in the Alternative Motion for Partial Summary Judgment" (Doc. 31) (the "Motion") by Defendant Progressive Direct Insurance Company ("Progressive"). By consent of the parties (Doc. 14 at 5), the undersigned has the authority to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.    Background

The present suit concerns a protracted period of time between a Plaintiff insured's initial demand for uninsured motorist benefits and her Defendant insurer's subsequent evaluation and offer of benefits under that policy—a period of time falling a week shy of one year. Defendant has argued that its investigation, evaluation, and offer were reasonably delayed as Plaintiff failed to remit documents necessary for evaluating the claim—namely, additional medical records from Cate Chiropractic, a wage verification form from her employer along with a doctor's note, and written verification that the tortfeasor's carrier had tendered its liability limits to Plaintiff. Plaintiff argues these reasons for delay are

unavailing, pointing to how Defendant ultimately completed its evaluation without the Cate Chiropractic records or a wage verification form, as well as to how Defendant's adjuster performed that evaluation the day after she received written confirmation of the payout from the tortfeasor's liability carrier.

Unless stated otherwise, the parties do not dispute the following facts. In March of 2022, Plaintiff Mary Paulding was in a motor vehicle accident. (Doc. 31 at 3). Through her attorney at the time, Robert Rode, she made a demand against her insurance carrier, Defendant, for underinsured motorist ("UIM") benefits on August 9, 2022. (*Id*.). Defendant claims, and Plaintiff disputes, that the demand consisted of an incomplete copy of Plaintiff's medical records. (*Id*. at 3; Doc. 41 at 7). Defendant's claim adjuster Mike Roell requested the missing records on August 17, 2022, and Rode's office emailed a copy of the records previously sent on August 19, 2022. (Doc. 31 at 3). Upon receipt, Roell specifically determined he was likely missing some of Plaintiff's records from Cate Chiropractic, and emailed Rode's office a request for those records as well as a blank medical authorization so that Roell could obtain those records directly. (*Id*. at 3–4). Plaintiff has noted that Defendant already possessed her medical authorization as she included it in her original demand for UIM benefits. (Doc. 41 at 7).

On August 29, 2022, Defendant called and emailed Rode's office requesting a recorded statement from Plaintiff. (Doc. 31 at 3). Between September 8, 2022 and January 24, 2023, Defendant made four calls, sent four letters, and sent one fax at various times following up on this request for a recorded statement. (*Id*. at 4–5). Almost five months after Defendant's initial request, Rode's office called Defendant on January 26, 2023 to schedule

2

the recording, and Defendant took Plaintiff's statement on February 9, 2023. (*Id*. at 5). It was during this recording that Defendant first learned that Plaintiff was also claiming lost wages as part of her UIM claim. (*Id*. at 5). Rode told Defendant he would request wage loss information after the statement concluded, and on April 10, 2023, his office sent a revised demand for UIM benefits including $930.43 in lost wages. (*Id*. at 5, 6). Rode did not respond to Defendant's requests for a completed "wage verification form" sent several times from March 1, 2023 to July 31, 2023, (*Id*. at 5–7), and Plaintiff asserts that the form was not necessary for Defendant to evaluate her lost wages claim as Plaintiff had provided all the relevant timesheets, paystubs, and calculations. (Doc. 41 at 10).

Amanda Tallbull replaced Roell as the adjuster for Plaintiff's claim on March 1, 2023. She continued to send requests to Rode's office for Plaintiff's medical information and a completed wage verification form, and on July 12, Tallbull sent a letter further requesting a "tentative agreement with the tortfeasor." (Doc. 31 at 6–7); (Doc. 31-3 at 22). This was despite Defendant having confirmed on September 1, 2022, that the tortfeasor's insurance carrier had tendered to Plaintiff its insured's policy limits, $25,000. (Doc. 31 at 4). On July 31, 2023, Tallbull reached out to the tortfeasor's insurance carrier directly and received written confirmation that the $25,000 had been tendered. The next day, August 1, 2023, Tallbull evaluated Plaintiff's claim to be worth $25,710 without accounting for lost wages, and she communicated an offer of $710 to Rode's office on August 2. (*Id*. at 7) (Doc. 31-2 at 19). Tallbull reiterated this offer by phone and letter on August 17, 2023, and on August 29, the claim was assigned to a new adjuster, Katie Woolley. (Doc. 31 at 7). Woolley requested a response to the offer several times from August through January, 2024,

and at the end of that month, Plaintiff initiated her present suit against Defendant. (*Id.* at 7–8).

Plaintiff has brought claims for breach of contract and breach of the implied duty of good faith and fair dealing, also known as the tort of bad faith. (Doc. 2-1 at 7). Plaintiff claims, among other allegations, that Defendant failed to pay the benefits she was owed, delayed payment of benefits without a reasonable basis, and failed to properly investigate and evaluate Plaintiff's claims. (*Id.* at 8–9). Defendant now moves for summary judgment as to Plaintiff's contract claim,[1] her bad faith claim, and her request for punitive damages. (Doc. 31 at 9, 14).

## II.    Legal Standards

To succeed in moving for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this initial burden, "the burden shifts to the nonmovant to 'set forth specific facts showing that there is a genuine issue for trial.'" *Lazy S Ranch Props., LLC v. Valero Terminaling and Distribution Co.*, 92

---

[1]    Notably, Defendant has asked the Court to render summary judgment on Plaintiff's breach of contract claim, but it has only briefed the Court on the bad faith claim and the request for punitive damages. Defendant does not seem to seriously contend that it is entitled to judgment as a matter of law on Plaintiff's claim for breach of contract. (*See* Doc. 31 at 9–15 (mentioning breach of contract only in a section title and opening sentence, citing no law for breach of contract, and only asserting entitlement to summary judgment on Plaintiff's non-contract claims in its conclusion)). Defendant has given no argument or authority for summary judgment on Plaintiff's breach of contract claim; the Court will not usurp the role of counsel and provide argument or authority in its place. *See Coones v. Bd. of Cnty. Comm'rs of the Unified Gov't of Wyandotte Cnty.*, 166 F.4th 1, 25 (10th Cir. 2026) (citing *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009)) (holding that a "few scattered references to" a claim "did not adequately raise any summary judgment arguments").

F.4th 1189, 1198 (10th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). In doing so, "[t]he nonmovant must show more than a 'scintilla of evidence' in support of its position, instead, the evidence must be sufficient for a jury to reasonably find for the nonmovant." *Id*. (quoting *Anderson*, 477 U.S. at 252). When ruling on the motion, the Court should view the evidence "in the light most favorable to the non-moving party." *Isaacson v. Isaacson*, 479 Fed. Appx. 162, 165 (10th Cir. 2012) (quoting *Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1286 (10th Cir. 2011)).

## III.    Discussion

Under Oklahoma law, insurers have an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 901 (Okla. 1977)). Where an insurer violates this duty, the insured may bring "an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Christian*, 577 P.2d at 904. To succeed in such an action, the insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life. Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (citing *McCoy v. Okla. Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992)).

Before sending the issue of bad faith to a jury, Oklahoma courts often use a two-step inquiry in analyzing an insured's claim. *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019). First, the court "considers whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim. If there

5

is no legitimate dispute between the parties, the court may infer that the insurer denied payment in bad faith." *Id.* (citing *Barnes v. Okla. Farm Bureau Mut. Ins. Co.,* 11 P.3d 162, 171, 175 (Okla. 2000)). Where a court finds there is a legitimate dispute and therefore no inference of bad faith, the court then determines whether "the plaintiff offered specific additional evidence to demonstrate bad faith" such that the plaintiff may submit the issue of bad faith to a jury. *Id.* (citing *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128–32 (10th Cir. 2012)). Such "additional evidence" may consist of facts that would permit a reasonable jury to conclude that the insurer failed to conduct a reasonable investigation, or that the insurer failed to make timely payment of the claim. *Id.*

### A.    Legitimate Dispute

An "insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a legitimate dispute as to coverage or amount of the claim." *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 340 (10th Cir. 1995) (quoting *Oulds*, 6 F.3d at 1436). To determine whether there is a legitimate dispute as to the coverage or value of an insurance claim, the Court considers whether "a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim." *Shotts*, 943 F.3d at 1316 (quoting *Oulds*, 6 F.3d at 1442). If a jury could find in favor of the insurer, that is "strong evidence" that there is a legitimate dispute, and the Court should not submit the issue of bad faith to a jury without additional evidence. *Id.*

In viewing the undisputed facts in the light most favorable to the nonmoving party, the Court concludes that a reasonable jury could find that Defendant reasonably withheld

benefits owed under Plaintiff's policy. The undisputed facts show that Defendant never ceased its attempts to communicate with Plaintiff through her prelitigation counsel prior to this suit. A reasonable jury could conclude that Defendant's investigation was reasonably delayed by Plaintiff's counsel's failure to timely respond to Defendant's requests for a recorded statement, medical records, and verification of Plaintiff's wages. Nor do the parties dispute that prior to filing suit, Plaintiff never responded to Defendant's offer of benefits following its investigation. A reasonable jury could find that this justifiably delayed payment to Plaintiff up to the time at which she filed the present action. As such, the Court moves to the next step of the analysis to determine if Plaintiff has nonetheless presented "additional evidence" of bad faith sufficient to put the issue to a jury.

### B.    Reasonable Investigation

In determining the validity of a claim, insurers are required to "conduct an investigation reasonably appropriate under the circumstances," *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991), and "[t]he investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith." *Oulds*, 6 F.3d at 1431. An insurance bad faith claim premised on the insurer's inadequate investigation may only proceed where the plaintiff has shown that "material facts were overlooked or that a more thorough investigation would have produced relevant information." *Timberlake*, 71 F.3d at 345 (citing *Oulds*, 6 F.3d at 1442). It is not enough to show that the insurer's investigation was simply incomplete. *Bannister*, 692 F.3d at 1128. Rather, the claimant must show that a complete investigation would have changed the underlying facts known to the insurer such they would not have a reasonable belief to

justify denial of the claim. *See id*. (citing *Timberlake*, 71 F.3d at 345).

Here, Plaintiff has advanced sufficient facts, supported by evidence, to create a triable issue of whether Defendant performed a reasonable investigation under the circumstances. In its Response, Plaintiff argued that Defendant undervalued Plaintiff's claim by failing to account for the permanency of her injuries. (Doc. 41 at 24–25). Plaintiff supports her argument by citing to adjuster Tallbull's claim notes and to the transcript of Tallbull's deposition. (*Id*.). In that deposition, Tallbull states that, despite noting Plaintiff had a kind of permanent injury—disc herniation—she marked "not applicable" next to "[w]hether the injuries are permanent" in her calculation of the claim's value, and she confirmed that she "didn't give [Plaintiff] anything for permanent injury." (*Id*. at 25). Viewing these facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant, through Tallbull, failed to reasonably investigate the permanency of Plaintiff's injuries and subsequently undervalued Plaintiff's claim. Plaintiff's bad faith claim may subsequently proceed under the theory that Defendant did not conduct an investigation reasonably appropriate under the circumstances.

### C.    Timely Payment

In Oklahoma, insurers "must take prompt action to determine what payment is due and may not delay the payment of benefits until exhaustion of liability limits" in responding to an underinsured motorist claim. *Buzzard*, 824 P.2d at 1112. The insurer's obligation applies to "the entire loss of its injured insured from the first dollar up to the policy limits." *Burch v. Allstate Ins. Co.*, 977 P.2d 1057, 1064 (Okla. 1998).

As discussed, a reasonable jury could find for Defendant by determining that delays

in investigating, evaluating, and offering payment on Plaintiff's claim are attributable to Plaintiff's prelitigation counsel failing to communicate timely with Plaintiff's insurer about her claim. Nonetheless, Plaintiff has also presented additional evidence to create a triable issue of fact as to whether those reasons for delay were justified. Plaintiff has contended that Defendant's initial reason for delay—the request for additional records from Cate Chiropractic—was unnecessary. As per Plaintiff's deposition of Tallbull, the Cate Chiropractic records Plaintiff sent in her initial demand for UIM benefits were complete. (Doc. 41 at 7) (Doc. 41-1 at 12). Further, Plaintiff has claimed that Defendant performed its claim evaluation—and premised its ultimate offer—on information that was largely present in the initial UIM demand, suggesting that Defendant could have made an identical or similar offer almost a year earlier. Defendant requested Plaintiff to produce the remainder of medical records she had already sent in full, (Doc. 41 at 13–14); wage information that it did not need to make an offer, (*Id.*); and a confirmation of tortfeasor's payment of policy limits that Defendant had long since already possessed. (*Id.* at 10). Given these well-supported factual contentions, a reasonable jury could find that some or none of these requests—nor Plaintiff's counsel's failure to timely address them—gave Defendant a justifiable reason to delay or withhold payment of benefits under Plaintiff's UIM policy. And so Plaintiff's claim of bad faith may proceed to trial on the theory that Defendant failed to promptly render payment on Plaintiff's UIM claim.

### D.    Punitive Damages

Defendant has moved the Court to render summary judgment against Plaintiff's request for punitive damages. (Doc. 31 at 14). This would normally be appropriate where

a Plaintiff has not created a triable issue of fact for the jury on an insurer's bad faith, leaving only a breach of contract claim. Under Oklahoma law, "[t]ypically, punitive damages are not recoverable solely for breach of contract obligations." *Wilspec Techs., Inc. v. DunAn Holding Grp., Co.*, 204 P.3d 69, 74–75 (Okla. 2009) (citing *Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989);  RESTATEMENT (SECOND) OF CONTRACTS § 355 (AM. L. INT. 1981)). Because there are  fact issues for trial of Plaintiff's claim of bad faith, she may still have a basis on which to recover punitive damages. Accordingly, the Court will not deny Plaintiff's request for punitive damages at this juncture.

## IV.     Conclusion

Based on the above analysis, Defendant's Motion for Summary Judgment is **denied**.

DATED this 21st day of July, 2026.

Christine D. Little
United States Magistrate Judge